**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HECTOR ALICEA, et al., | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO.  14-0213 |
| SCOTT SCHWEIZER, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                             August 12, 2015


Currently pending before the Court is the Motion by Defendants City of Philadelphia, Police Officer Scott Schweizer, Police Officer Erik Pross, Police Officer Shaun Parker, Police Officer Leroy Ziegler, Detective James Weiss, and Police Commissioner Charles Ramsey (collectively, "Defendants") for Summary Judgment as to all federal and state law claims asserted by Plaintiffs Hector Alicea, Kevin Jones, Aurea Martinez, Ruth Martinez, and Elisa Velazquez (collectively, "Plaintiffs").  For the following reasons, Defendants' Motion for Summary Judgment is granted.

## I.   FACTUAL HISTORY[1]

### A.   Documents Submitted By the Parties

Defendants submitted with their Motion for Summary Judgment a Statement of Undisputed Material Facts.  (Defs.' Mot. Summ. J., Ex. B, Statement of Undisputed Material Facts ("Defs.' SUMF").)  Each fact set forth by Defendants includes a reference to an exhibit that supports that fact.  (See id.)  Plaintiffs included a section in their Response in Opposition titled "Statement of Undisputed Material Facts," consisting of one subsection titled "Training and Professional History of Defendants" in which they list for Defendants Weiss, Ziegler, Parker, Schweizer, and Pross the paragraphs of the exhibits supporting Defendants' Statement of Undisputed Material Facts with which they do not disagree.  (See Pls.' Resp. Opp'n Mot. Summ. J. 3.)  Plaintiffs also included in their Response in Opposition a "Statement of Disputed Material Facts" consisting of thirteen and one half pages, wherein Plaintiffs list for each individual Defendant the facts which they contest.  (See id. at 4–17.)  In Plaintiffs' Statement of Disputed Material Facts, they refer to Exhibits 1–11, 16, and 17, which are not labeled but which

---

[1] The statement of facts is compiled from a review of the parties' statements of undisputed and disputed material facts, briefs, and the evidence submitted in conjunction with those briefs.  To the extent the parties allege a fact that is unsupported by evidence, the Court does not include it in the recitation of facts.  Where the parties have specifically cited exhibits attached to their briefs, the Court has reviewed and considered those cited materials.  See Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 (3d Cir. 2006) ("As noted by the Seventh Circuit, 'Judges are not like pigs, hunting for truffles buried in' the record.") (quoting Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys., 309 F.3d 433, 436 (7th Cir. 2002) (internal quotation omitted)); see also Perkins v. City of Elizabeth, 412 F. App'x 554, 555 (3d Cir. 2011) (noting that "a court is not obliged to scour the record to find evidence that will support a party's claims.") (citing Doeblers', 442 F.3d at 820 n.8); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

somewhat correspond with the electronic case file headers.[2]  (See, e.g., id. at Document No. 19-1.)  References to those exhibits do not appear to have a connection to the documents behind the exhibit pages for "exhibits" 1 through 13, some of which also include multiple documents as part of each "exhibit."  (See, e.g., id., Document No. 19-13, at 31.)  To the extent that Plaintiffs included and cited an exhibit to support what they refer to as the disputed material facts, and to the extent that the Court can ascertain to which document Plaintiffs intended to refer, the Court will consider those exhibits in the following fact section.  For ease of reference, the Court will primarily cite to the individually numbered paragraphs of Defendants' Statement of Undisputed Material Facts, rather than the Plaintiffs' Statement of Undisputed Material Facts, which primarily consists of an identification of paragraph numbers from the Defendants' Declarations, and which consists of subsections that are all numbered Paragraph 1.  (See Pls.' Resp. Opp'n Mot. Summ. J. 3.)

**B.  Undisputed Facts Supported by the Parties' Exhibits**[3]

**1.  Defendant Weiss**

Defendant Weiss is a police detective, Badge Number 0666, who has been employed by the Philadelphia Police Department since October 15, 2011.  (Defs.' SUMF ¶ 1, Ex. C, Declaration of Detective James Weiss ("Weiss Decl."), Jan. 26, 2015, at ¶ 1.)[4]  Defendant Weiss

---

[2] Plaintiffs did not provide the Court with a courtesy copy of their Response in Opposition and its exhibits, which might have incorporated some form of labeling to separate the exhibits.

[3] To the extent Plaintiffs dispute a paragraph from Defendants' Statement of Undisputed Material Facts, but provide no evidence to support their contention, and where Defendants rely on evidence in support of a fact set forth in their Statement of Undisputed Material Facts, the Court includes it as an undisputed fact.  See Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.").

[4] The facts have primarily been taken from the Defendants' Statement of Undisputed Facts, which contains facts supported by statements in the Defendants' declarations and which are

is currently assigned to the East Detectives Division, to which he has been assigned since December 28, 2005.  (Id. ¶ 2.)  Defendant Weiss successfully completed recruit training at the Philadelphia Police Academy and became a sworn police officer on July 19, 2002.  (Id. ¶ 3; Ex. H, Police Academy Grade Sheets of Defendants Pross, Ziegler, Parker, Schweizer, and Weiss, at 1003.)  There, he received training on civil and criminal liability in the wrongful use of police authority; laws and procedures, including constitutional law, criminal law, criminal procedure, laws of arrest, admissions and confessions, and controlled substances; principles of criminal investigations, including interviewing and interrogations, identifying and collecting evidence, identification of suspects, controlled substances, surveillance and case preparation; and use of force.  (Id. ¶ 4; Ex. C ¶ 4; Ex. H at 1003; Ex. I, Philadelphia Police Academy Recruit Training Curriculum, at 62–63.)  He also received training at the Police Academy regarding the Philadelphia Police Department's rules and directives, including the use of force policy.  (Id. ¶ 5; Ex. C ¶ 5; Ex. I at 64.)  Since his graduation, Defendant Weiss has received annual training on a variety of topics, including updates on laws of arrest, search and seizure, and use of force, in order to maintain his state-mandated certification as a police officer.  (Id. ¶ 6; Ex. C ¶ 6.)

Defendant Weiss has never been found in a court of law to have violated any citizen's civil rights.  (Id. ¶ 7.)  Defendant Weiss has never been found in a court of law to have committed the state common law torts of assault, battery, false arrest, false imprisonment, or malicious prosecution.  (Id. ¶ 8.)  No complaint of physical abuse or false arrest against Defendant Weiss has ever been sustained by the Internal Affairs Bureau of the Philadelphia Police Department.  (Id. ¶ 9.)  Defendant Weiss has never been disciplined for physical abuse or

---

found in Defendants' Exhibits C, D, E, F, and G.  In some places, the Court will simply cite to the Defendants' Statement of Undisputed Facts, rather than also citing to the declarations. Where an exhibit other than a declaration is cited in the Defendants' Statement of Undisputed Facts, the Court will cite to it.

false arrest, or for violating any Philadelphia Police Department rule, regulation, or policy regarding the misuse or abuse of his authority as a police officer and detective.  (Id. ¶ 10.)

### 2.  **Defendant Ziegler**

Defendant Ziegler is a police officer, Badge Number 4560, and has been employed by the Philadelphia Police Department since March 24, 2008.  (Id. ¶ 11; Ex. D, Declaration of Police Officer Leroy Ziegler, Jan. 30, 2015, at ¶ 1 ("Ziegler Decl.").)  He is currently assigned to the 24th Police District, an assignment he has held since October 27, 2008.  (Id. ¶ 12.)  Defendant Ziegler successfully completed recruit training at the Philadelphia Police Academy and became a sworn police officer on October 24, 2008.  (Id. ¶ 13.)  There, he received state-mandated training on civil and criminal liability in the wrongful use of police authority; laws and procedures, including training on constitutional law, criminal law, criminal procedure, laws of arrest, admissions and confessions, lethal weapons laws, and controlled substances; principles of criminal investigations, including interviewing and interrogations, identifying and collecting evidence, identification of suspects, controlled substances, surveillance, and case preparation; and use of force training.  (Id. ¶ 14; Ex. D ¶ 4; Ex. H at 1000; Ex. I at 68–69.)  He also received training at the Police Academy regarding the Philadelphia Police Department's rules and directives, including the use of force policy.  (Id. ¶ 15; Ex. D ¶ 5; Ex. I at 69.)  Since his graduation, Defendant Ziegler has received annual training on a variety of topics, including updates on laws of arrest and use of force, in order to maintain his state-mandated certification as a police officer.  (Id. ¶ 16; Ex. D ¶ 6.)

Defendant Ziegler has never been found in a court of law to have violated any citizen's civil rights.  (Id. ¶ 17.)  Defendant Ziegler has never been found in a court of law to have

committed the state common law torts of assault, battery, false arrest, false imprisonment, or malicious prosecution.  (Id. ¶ 18.)  No complaint of physical abuse against Defendant Ziegler has ever been sustained by the Internal Affairs Bureau of the Philadelphia Police Department.  (Id. ¶ 19.)  Defendant Ziegler has never had a complaint of false arrest against him.  (Id. ¶ 20.)  Defendant Ziegler has never been disciplined for physical abuse or false arrest, or for violating any Philadelphia Police Department rule, regulation, or policy regarding the misuse or abuse of his authority as a police officer.  (Id. ¶ 21.)  Defendant Ziegler was reprimanded once for failing to comply with a court notice on August 14, 2012.  (Id. ¶ 22.)

   **3.  Defendant Parker**

   Defendant Parker is a police officer, Badge Number 3951, and has been employed by the Philadelphia Police Department since March 24, 2008.  (Id. ¶ 23; Ex. E, Declaration of Police Officer Shaun Parker, Jan. 26, 2015, ¶ 1 ("Parker Decl.").)  He is currently assigned to the 17th Police District, an assignment he has held since October 24, 2008.  (Id. ¶ 24.)  He was previously assigned to the 24th District from February 2011 until October 31, 2011.  (Id. ¶ 25.)  Defendant Parker successfully completed recruit training at the Philadelphia Police Academy and became a sworn police officer on October 24, 2008.  (Id. ¶ 26; Ex. H at 1001.)  There, he received state-mandated training on civil and criminal liability in the wrongful use of police authority; laws and procedures including training on constitutional law, criminal law, criminal procedure, laws of arrest, admissions and confessions, lethal weapons laws, and controlled substances; principles of criminal investigations, including interviewing and interrogations, identifying and collecting evidence, identification of suspects, controlled substances, surveillance, and case preparation; and use of force training.  (Id. ¶ 27; Ex. E ¶ 5; Ex. H at 1001; Ex. I at 68–69.)  He also received training at the Police Academy regarding the Philadelphia Police Department's rules and

directives, including the use of force policy.  (<u>Id.</u> ¶ 28; Ex. E ¶ 6; Ex. I at 69.)  Since his

graduation, Defendant Parker has received annual training on a variety of topics, including

updates on laws of arrest and use of force, in order to maintain his state-mandated certification as

a police officer.  (<u>Id.</u> ¶ 29; Ex. E ¶ 7.)

 Defendant Parker has never been found in a court of law to have violated any citizen's

civil rights.  (<u>Id.</u> ¶ 30.)  Defendant Parker has never been found in a court of law to have

committed the state common law torts of assault, battery, false arrest, false imprisonment, or

malicious prosecution.  (<u>Id.</u> ¶ 31.)  No complaint of physical abuse or false arrest against

Defendant Parker has ever been sustained by the Internal Affairs Bureau of the Philadelphia

Police Department.  (<u>Id.</u> ¶ 32.)  Defendant Parker has never been disciplined for physical abuse

or false arrest, or for violating any Philadelphia Police Department rule, regulation, or policy

regarding the misuse or abuse of his authority as a police officer.  (<u>Id.</u> ¶ 33.)  Defendant Parker

received training and counseling for an arrest that occurred on March 8, 2011, because he forgot

to sign the property receipt.  (<u>Id.</u> ¶ 34.)  In 2012, Defendant Parker was suspended for one day

for being involved in a preventable auto accident.  (<u>Id.</u> ¶ 35.)

 **4.  <u>Defendant Schweizer</u>**

 Defendant Schweizer is a police officer, Badge Number 9543, and has been employed by

the Philadelphia Police Department since June 23, 1997.  (<u>Id.</u> ¶ 36; Ex. F, Declaration of Police

Officer Scott Schweizer, Jan. 26, 2015, ¶ 1 ("Schweizer Decl.").)  Defendant Schweizer is

currently assigned to the 24th Police District, where he has been assigned since November 18,

2010.  (<u>Id.</u> ¶ 37.)  He successfully completed recruit training at the Philadelphia Police Academy

and became a sworn police officer on December 12, 1997.  (<u>Id.</u> ¶ 38; Ex. F, ¶ 3; Ex. H at 1002.)

There, Defendant Schweizer received state-mandated training on civil and criminal liability in

the wrongful use of police authority, civil rights, laws of arrest, search and seizure, the
constitutional and statutory limitations on the use of force, investigations, area searches,
surveillance, controlled substances, evidence, processing evidence, criminal law (Pennsylvania
Crimes Code), and criminal procedure.  (Id. ¶ 39; Ex. F ¶ 4; Ex. H at 1002; Ex. I at 60–61.)  He
also received training on the Philadelphia Police Department's directives and regulations,
including the use of force policy.  (Id. ¶ 40; Ex. F ¶ 5; Ex. I at 61.)  Since graduating from the
Police Academy, Defendant Schweizer has received annual training on a variety of topics,
including updates on laws of arrest, search and seizure, and use of force.  (Id. ¶ 41.)  Defendant
Schweizer is certified to conduct field tests to identify controlled substances, such as heroin and
crack cocaine.  (Id. ¶ 42.)

Defendant Schweizer has never been found in a court of law to have violated any
citizen's civil rights.  (Id. ¶ 43.)  Defendant Schweizer has never been found in a court of law to
have committed the state common law torts of assault, battery, false arrest, false imprisonment,
or malicious prosecution.  (Id. ¶ 44.)  He has never been disciplined by the Police Department for
physical abuse or false arrest.  (Id. ¶ 45.)  No complaint of physical abuse or false arrest against
Defendant Schweizer has ever been sustained by the Internal Affairs Bureau of the Philadelphia
Police Department.  (Id. ¶ 46.)  Defendant Schweizer was investigated and disciplined by the
Philadelphia Police Department, on one occasion, for verbal abuse (using offensive language)
arising from a complaint in late 2004.  (Id. ¶ 47.)  Defendant Schweizer received training and
counseling arising from a discharge of his firearm while on duty on October 25, 2011.  (Id. ¶
48.)

     **5.  <u>Defendant Pross</u>**

Defendant Pross is a police officer, Badge Number 5380, and has been employed by the Philadelphia Police Department since December 16, 2002.  (Id. ¶ 49; Ex. G, Declaration of Police Officer Erik Pross, Jan. 26, 2015, ¶ 1 ("Pross Decl.").)  He is currently assigned to the 24th Police District, where he has been assigned since November 18, 2010.  (Id. ¶ 50.)  He successfully completed recruit training at the Philadelphia Police Academy and became a sworn police officer on August 22, 2003.  (Id. ¶ 51; Ex. G ¶ 3; Ex. H at 999.)  There, Defendant Pross received state-mandated training on civil and criminal liability in the wrongful use of police authority; laws and procedures, including training on constitutional law, criminal law, criminal procedure, laws of arrest, admissions and confessions, lethal weapons laws, and controlled substances; principles of criminal investigations, including interviewing and interrogations, identifying and collecting evidence, identification of suspects, controlled substances, surveillance and case preparation; and use of force training.  (Id. ¶ 52; Ex. G ¶ 4; Ex. H at 999; Ex. I at 65–67.)  He also received training on the Philadelphia Police Department's rules and directives, including the use of force policy.  (Id. ¶ 53; Ex. G ¶ 5; Ex. I at 66–67.)  Since graduating from the Police Academy, Defendant Pross has received annual training on a variety of topics, including updates on laws of arrest, search and seizure, and use of force.  (Id. ¶ 54.)

Defendant Pross has never been found in a court of law to have violated any citizen's civil rights.  (Id. ¶ 55.)  He has never been found in a court of law to have committed the state common law torts of assault, battery, false arrest, false imprisonment, or malicious prosecution.  (Id. ¶ 56.)  No complaint of physical abuse against him has ever been sustained by the Internal Affairs Bureau of the Philadelphia Police Department.  (Id. ¶ 57.)  Internal Affairs has never received a complaint of false arrest involving Defendant Pross.  (Id. ¶ 58.)  He has never been disciplined for physical abuse or false arrest, or for violating any Philadelphia Police Department

rule, regulation, or policy regarding the misuse or abuse of his authority as a police officer.  (Id. ¶ 59.)  Defendant Pross was reprimanded for an automobile accident in the line of duty that occurred on April 6, 2006.  (Id. ¶ 60.)  He received training and counseling arising from a discharge of his firearm while on duty on October 25, 2011.  (Id. ¶ 61.)

### 6.  **Philadelphia Police Department Policies and Procedures**

Directive 22 is the Philadelphia Police Department's use of force policy.  (Id. ¶ 62; Ex. J, Philadelphia Police Department ("PPD") Directive 22, Dec. 20, 2010, at 768–792.)  Among other things, Directive 22 states that "[e]xcessive force and/or gratuitous use of any force will not be tolerated."  (Id. ¶ 63; Ex. J at 768.)  Directive 22 informs officers that "it shall be the duty of every officer present at any scene where force is being applied to either stop or attempt to stop another officer when force is no longer required."  (Id. ¶ 64; Ex. J at 769.)  In circumstances where force is being applied by an officer in the presence of other officers, Directive 22 advises all police that their "actions [in stopping or attempting to stop another officer when force is no longer required] will protect the officer [using force] from civil or criminal liability and the civilian from serious injury."  (Id. ¶ 65; Ex. J at 769.)  Directive 22 states that the goal in use of force situations is to "use the appropriate amount of force necessary to reduce and de-escalate [the offender's actions]."  (Id. ¶ 66; Ex. J at 769.)

Directive 79 guides the Philadelphia Police Department's disciplinary procedure.  (Id. ¶ 67; Ex. K, PPD Directive 79, May 1, 2010, at 793–807.)  Except in limited circumstances, only the Police Commissioner has the authority to suspend, demote, or dismiss a member of the PPD.  (Id. ¶ 68; Ex. K at 793.)  When a member of the PPD has been formally charged, the officer may appear before a Police Board of Inquiry, but the Police Commissioner always maintains the right to initiate Commissioner's Direct Action at any time for any violation.  (Id. ¶ 69; Ex. K at 797–

798.)  The Police Commissioner is not bound by the PPD member's Commanding Officer's recommendation or the Police Board of Inquiry's recommendation.  (Id. ¶ 70; Ex. K at 798.)  It is the responsibility of all members of the PPD to report corruption, misconduct, or other improper acts.  (Id. ¶ 72; Ex. L, PPD Directive 114, March 4, 2011, at 808–809.)  The reporting process enables members of the PPD to anonymously report alleged professional misconduct by telephone or electronically through the Commissioner's office or the PPD website.  (Id. ¶ 73; Ex. L at 809–810.)

All members of the PPD are subject to the standards set forth in the PPD Disciplinary Code.  (Id. ¶ 74; Ex. M, PPD Disciplinary Code, April 13, 2010, at 1004–1005.)  The PPD Disciplinary Code, among other things, proscribes: an officer's failure to officially report corruption or other illegal acts; an officer's failure to stop, or attempt to stop, another officer from using force when that force is no longer required; unauthorized and/or excessive use of force in the line of duty; lying under oath about any material facts in any proceeding; making a false entry in any PPD record or report; and conduct that indicates an employee has little or no regard for his or her responsibility as a member of the PPD.  (Id. ¶ 75.)

The procedures for complaints against the PPD are set forth in PPD Directive 127.  (Id. ¶ 76; Ex. N, PPD Directive 127, November 13, 2000, at 814–821.)  Internal Affairs oversees and investigates complaints against the PPD.  (Id. ¶ 77; Ex. N at 814–821.)  Complaints against the PPD are forwarded to the District Attorney.  (Id. ¶ 78; Ex. N at 818.)  Once an investigation is completed, the Chief Inspector of the Internal Affairs Bureau reviews the entire investigative file and report, and after approval, forwards them through the chain of command to the Police Commissioner for final disposition.  (Id. ¶ 79; Ex. N at 818.)

7. **Arrest and Prosecution of Plaintiffs Jones, Johnson, and Alicea**[5]

On October 16, 2011, at approximately 11:48 p.m., Defendants Schweizer and Pross were on duty in plain clothes, in a parked, unmarked police vehicle, conducting surveillance of suspected drug activity in the 500 block of Indiana Avenue. (Id. ¶ 80.) They saw Plaintiff Hector Alicea ("Alicea") standing near a silver minivan and talking to a woman.[6] (Id. ¶ 81.) They then saw a black male, later identified as Plaintiff Kevin Jones, aka Khalifa Shabazz ("Jones"), and a black female, later identified as Jasmine Johnson ("Johnson"), appear on the block near the intersection of Indiana Avenue and Hartville Street. (Id. ¶ 82.) The officers heard

---

[5] In this section, the Court will cite to the paragraphs of Defendants' Statement of Undisputed Facts, rather than the paragraph of the particular Defendant's declaration that supports the fact stated.

[6] Plaintiffs contest statements from Defendants Schweizer and Pross stating "that Plaintiff Alicea was talking to a female while standing near a silver van." (Pls.' Resp. Opp'n Mot. Summ. J. 14 (citing Exs. 1, 16, 17).) Plaintiffs apparently believe that because "Defendant Schweizer testified at both Plaintiff Alicea's preliminary hearing and suppression hearing that Plaintiff Alicea was on a step conversing with an unknown female, Plaintiff Velazquez," he could not also have been near a silver van at the same time that he was on a step. (See id. at 14–15.)

Plaintiffs do not explain how Exhibit 1 supports their argument. Plaintiffs do not cite any particular pages or lines in the transcripts that are their Exhibits 16 and 17. The Court has reviewed Exhibits 16 and 17, and notes the following excerpts from Defendant Schweizer's testimony: "The defendant was already on location. He was out there in conversation with a female." (See Pls.' Ex. 16, Preliminary Hearing Transcript, Nov. 2, 2011, at 5:8–9.) "He then bent down by the front tire of a silver minivan, the passenger side that was parked in front of the first property on Indiana . . . ." (Id. at 5:19 – 22.) Thus, according to Defendant Schweizer's testimony at the preliminary hearing, Plaintiff Alicea was standing near a silver minivan.

Defendant Schweizer testified at another hearing that "Mr. Alicea was out there already on location with a female that he appeared to be in conversation with. They were standing on what would be the north side of the street." (See Pls.' Ex. 17 at 23, Waiver Trial Transcript, May 7, 2014, at "By Ms. Walsh" lines 21–24.) He went on to testify that "[t]here was a mini van that was parked just off of the corner also on the north side of the street." (Pls.' Ex. 17 at 24, lines 9–10.) These exhibits do not create a genuine issue of material fact regarding the Defendants' statements that Plaintiff Alicea was standing near a silver van, talking to a woman, simply because he may also have been standing on a step that was near the van.

Alicea say, "What ya need?"[7]  (Id. ¶ 83.)  Defendants Schweizer and Pross saw Jones and

Johnson walk over to Alicea and saw each of them hand money to Alicea.  (Id. ¶ 84.)  They then

saw Alicea bend down by the front, passenger-side tire area of the silver minivan and retrieve an

item from the base of the tire.  (Id. ¶ 85.)  They observed Mr. Alicea hand an item small enough

to fit in the palm of the hand of both Jones and Johnson.  (Id. ¶ 86.)  Jones and Johnson walked

out of the area of surveillance, at which time Defendants Schweizer and Pross saw a marked

patrol vehicle come through the area.  (Id. ¶ 87.)  Defendant Schweizer contacted the officers in

that car, Defendants Ziegler and Parker, via police radio.  (Id.)

Defendants Ziegler and Parker stopped Jones and Johnson in the 3000 block of Hartville

Street because they fit the flash information that Defendant Schweizer provided over police

radio.  (Id. ¶ 88.)  During the investigatory stop, Defendants Ziegler and Pross found that Jones

and Johnson each had a packet of heroin stamped with a "7-Up" logo.  (Id. ¶ 89.)  Shortly after

---

[7]      Plaintiffs also "contest Defendants Schweizer's [sic] and Pross' [sic] heard Plaintiff
Alicea for two reasons.  First, Defendants were parked in a car on a loud and busy area
approximately 75 feet away from Plaintiffs Alicea and Jones."  (Pls.' Resp. Opp'n Mot. Summ.
J. 15 (citing Ex. 17).)

Defendant Schweizer testified at Plaintiff Alicea's waiver hearing that "I could hear the
defendant say: What do you need.  With that, the three stepped closer and had a conversation that
I could not hear."  (Pls.' Ex. 17 at 24, 3–6.)  He also testified that he was parked on Indiana
Street across the intersection from Plaintiff Alicea with an additional distance of "25, 30 feet into
the block."  (Id. at 32, 1–2.)  He then testified that when Plaintiff Alicea was speaking to a
woman on the street, he was "maybe, 75 feet away," but that he "came closer to me.  That was
right on the corner of Hartville and Indiana so, maybe, 50 feet?"  (Id. at 10–19.)  He also testified
that there was nobody else in the area "that [he] noticed or was paying attention to."  (Id. at 34,
2–6.)  When asked whether there were other cars parked between his car and the silver van, he
said "no."  (Id. at 40, 15–18.)

On the basis of Defendant Schweizer's testimony at the preliminary hearing and the
waiver hearing, Plaintiffs have not created a genuine issue of material fact regarding whether
Defendant Schweizer or Defendant Pross could have heard Plaintiff ask "what ya need," in the
absence of any affidavit or declaration from Plaintiff Alicea or anyone else about the volume of
his voice, or the noise conditions on the street at the time.  The Court also notes that it was past
11:45 at night when these events occurred, and that Plaintiffs have not set forth any evidence to
show that it was actually "a loud and busy area" such that Defendants could not have heard
something that Plaintiff Alicea said from somewhere between twenty-five to seventy-five feet
away.

Defendant Schweizer made radio contact with Defendants Ziegler and Parker, he and Defendant Pross learned from them that they had stopped Jones and Johnson on the 3000 block of Hartville Street.  (Id. ¶ 90.)  Defendants Ziegler and Parker notified Defendants Schweizer and Pross over the radio that Jones and Johnson were each found in possession of one Ziploc packet containing a blue glassine packet stamped "7-Up."  (Id. ¶ 91.)

After Jones and Johnson were stopped and secured, Defendants Schweizer and Pross approached Alicea.  (Id. ¶ 92.)  Defendant Pross secured Alicea while Defendant Schweizer looked in the front passenger-tire area of the silver minivan, from where he had seen Alicea retrieve the items.  (Id. ¶ 93.)  There, on the ground, Defendant Schweizer saw a green Newport cigarette box and picked it up.  (Id. ¶ 94.)  Defendant Schweizer opened the cigarette box and found inside a total of eight clear Ziploc packets, each with a blue glassine insert stamped "7-Up," as well as eleven orange Ziploc packets, each containing a white chunky substance that appeared to be crack cocaine.  (Id. ¶ 95.)  The eight packets containing the blue glassine insert stamped "7-Up" were similar to the packets recovered from Jones and Johnson.  (Id. ¶ 98.)

With Jones and Johnson in custody in their patrol car, Defendants Ziegler and Parker drove to where Defendants Schweizer and Pross were located and saw them with Alicea, who was by then in custody.  (Id. ¶ 96.)  Defendant Schweizer told Defendants Ziegler and Pross that the black male and female, Jones and Johnson, were the people he saw involved in the drug transaction.  (Id. ¶ 97.)  Defendant Schweizer then saw a gray drawstring bag on top of the front passenger-side tire, about two feet from where he had recovered the green Newport cigarette box.  (Id. ¶ 99.)  He opened the bag and found a black Smith & Wesson revolver with brown grips that contained six live rounds in the cylinder.  (Id. ¶ 100.)  Alicea could not produce a valid permit to carry a firearm.  (Id. ¶ 101.)  At that point, Alicea was placed under arrest.  (Id. ¶ 102.)

During a safety frisk of Alicea, Defendant Pross recovered $96 in U.S. currency from Alicea's person.  (Id. ¶ 103.)  The suspected narcotics, drawstring bag, revolver, and money were placed on property receipts.  (Id. ¶ 104.)  Defendant Schweizer conducted field tests on the suspected drugs seized from Jones and Johnson, as well as the suspected drugs found in the Newport cigarette box.  (Id. ¶ 105.)  The white powdery substance in the blue glassine inserts stamped "7-Up" tested positive for heroin.  (Id. ¶ 106.)  The white chunky substances from the eleven orange Ziploc packets tested positive for having a cocaine base.  (Id. ¶ 107.)

With the exception of Defendant Pross, who handcuffed Alicea without a struggle, none of the officers on the scene used unnecessary physical force on Alicea at any time during the investigation and arrest.  (Id. ¶ 108.)  No officer on the scene saw any other officer use unnecessary force on Alicea at any time during the investigation or arrest.  (Id. ¶ 109.)  No officer used unnecessary force on Jones at any time.  (Id. ¶ 110.)  Neither Alicea nor Jones appeared to have any physical injuries or complained of any pain at any time in the presence of the officers on the scene.[8]  (Id. ¶ 111.)  Neither Alicea nor Jones required medical attention as a result of his arrest.[9]  (Id. ¶ 112.)

---

[8] Plaintiffs contest Defendants' assertion that Plaintiff Alicea did not have any injuries, because the arrest photo Plaintiffs identify as their Exhibit 5 shows "Plaintiff Alicea having injuries as can be seen on his forehead is a large bruise, which was caused as a result, of actions by Defendants Schweizer and Pross during his arrest and was immediately and obviously evident." (Pls. Resp. Opp'n Mot. Summ. J. 9, 12–13.)  The Court cannot determine from the black and white photo whether the mark on Plaintiff's forehead is a bruise, a birthmark, or some other type of mark; or if it is a bruise, whether it is an old bruise or a fresh bruise.  Plaintiff Alicea did not submit an affidavit or declaration to support counsel's contention that he was injured and that Defendants caused his injury.  Accordingly, Plaintiffs have not created a genuine issue of material fact on this point.

[9] Plaintiffs assert that they asked for medical attention but that their requests were refused.  Plaintiffs have not submitted any affidavits or declarations or other evidence in support of this contention.  Accordingly, Plaintiffs have not created a genuine issue of material fact on that issue.

At no time during the investigation and prosecution of Alicea did any of the officers on the scene provide false information to the District Attorney.[10]  (Id. ¶ 113.)  At no time during the investigation of Jones did any of the officers on the scene provide false information to the District Attorney.[11]  (Id. ¶ 114.)  Defendants Schweizer, Pross, Ziegler, and Parker do not initiate criminal proceedings against suspected criminals; the District Attorney does.  (Id. ¶ 115.)

---

[10] Plaintiffs contest Defendant Parker's statement that he did not provide false information about Plaintiff Alicea to the District Attorney's Office, stating "[i]n the Property Receipt 2996336 for Plaintiff Alicea, the materials recovered allegedly from him included a packet stamped '7-Up' containing a white powder and 11 packages containing a white powder substance.  Yet on the Evidentiary Control Data Form completed by [a chemist and another officer], there was a marking indicating the property receipt was corrected to match the evidence.  Further, [the chemist] classified the materials allegedly seized from Plaintiff Alicea as an 'off-white' not white powder, and did not note any package markings '7-Up.'"  (Pls.' Resp. Opp'n Mot. Summ. J. 14 (citing Exs. 2, 4, 9).)  Plaintiffs further assert that those are "plainly obvious discrepancies that would have been immediately apparent to the arresting officer and seizing officer and there has been no other explanation from Defendants for these drastic differences."  (Id.)

First, the exhibits cited by Plaintiffs do not indicate in what way the property receipt was corrected.  Second, the fact that the chemist thought the powder was "off-white" while the officer thought the powder was "white" is not a "drastic difference."  Third, Plaintiffs are incorrect that the chemist did not note package markings, because Exhibit 9 shows that the Chemistry Laboratory Report describes Item 1 as "blue in clear packets, '7 Up', off white powder."  (See Pls.' Ex. 9.)  Finally, the field test and the chemistry laboratory test both showed that the powder was heroin.  The points that Plaintiffs raise do not create a genuine issue of material fact as to whether the officers provided false information to the District Attorney's Office.

[11] Plaintiffs contest Defendant Ziegler's statement that he did not provide false information about Plaintiff Jones to the District Attorney's Office, stating that "[i]n the Property Receipt 2996334 for Plaintiff Jones, that Defendants Ziegler and Parker attested to, the materials recovered from Plaintiff Jones was a packet stamped '7-Up' containing a white powder.  Yet on the Evidentiary Control Data Form [completed by a chemist and another officer] there was no marking indicating the evidence was consistent with the property receipt.  Further on [the chemist's form] she classified the materials allegedly seized from Plaintiff Jones as a 'tan' not white powder, and the markings not as '7-Up' but as illegible."  (Pls.' Resp. Opp'n Mot. Summ. J. 10, 11–12, 13–14 (citing Pls. Ex. 6–8).)  Plaintiffs assert that "[t]hese are plainly obvious discrepancies that would have been immediately apparent to the arresting and seizing officer and there has been no other explanation from Defendants for these drastic differences."  (Id.)

First, with respect to Plaintiffs' Exhibit 7, the Evidence Control Data Form, neither box is checked to indicate whether the evidence was consistent with the property receipt or whether the property receipt was corrected to match the evidence.  The words on the "Remarks" section of that form are completely unreadable, though it is not clear whether that is due to photocopying.

Defendant Weiss was the detective assigned to investigate the circumstances surrounding the arrests of Alicea (aka Aliciea Hector), Jones, and Johnson on October 16, 2011.  (Id. ¶ 116.) Defendant Weiss was not present at the scene of the arrests and did not participate in any way in the surveillance of Alicea, Jones, or Johnson that led to their arrests.  (Id. ¶ 117.)  His involvement in the investigation began when Alicea, Jones, and Johnson were brought in by the arresting officers.  (Id. ¶ 118.)  After Defendant Weiss received information from the arresting officers about what they had observed, and what evidence was recovered from them, he prepared an investigation report and arrest reports for Alicea, Jones, and Johnson.  (Id. ¶ 119.)  He determined that Alicea's name is "Aliciea Hector,"[12] and confirmed that he had prior felony convictions for murder and robbery, which to Weiss meant that Alicea was prohibited from possessing a firearm.  (Id. ¶ 120.)  Defendant Weiss also determined that Khalifa Shabazz is also known as Kevin Jones.[13]  (Id. ¶ 121.)

---

Second, with respect to Plaintiffs' Exhibit 8, the difference between describing a powder as "white" versus "tan" is not a "drastic" difference and may be a result of lighting conditions or the perception of color experienced by the officers at the scene, the detective recommending charges, and the chemists conducting their analysis.  The fact that the officers were able to make out "7-Up" from the markings on the packets at the time they viewed them, while the chemist viewed them as "illegible" when they were analyzed one month later, is also not a "drastic" difference.  Third, the description from the property receipt describes a "clear heat sealed packet cont a blue glassine packet," which is consistent with the chemist's description of "blue in clear packet."  Finally, the property receipt indicates that the field test on the powder was positive for heroin, and the result of the chemist's analysis also showed that the powder was heroin.  The points that Plaintiffs raise do not create a genuine issue of material fact as to whether the officers provided false information to the District Attorney's Office.

[12] Because the parties' briefs and statements of fact refer to Plaintiff as Hector Alicea, the Court has used that name throughout this Opinion.

[13] Plaintiffs explain that in 1992 Kevin Jones legally changed his name to Khalifa Shabazz, but that "[d]ue to the overwhelming majority of paperwork including charging documents his birth not legally changed name was utilized to simply [sic] filings and motions."  (Pls.' Resp. Opp'n Mot. Summ. J. 3.)

As a result of his investigation, Defendant Weiss recommended to the District Attorney's Charging Unit ("DACU") that Johnson be charged with knowingly or intentionally possessing a controlled substance (heroin) by a person not registered under Pennsylvania's Controlled Substance, Drug, Device, and Cosmetic Act ("the Act"), and with knowing purchase or intentional receipt of a controlled substance (heroin) from a person not authorized by law to sell such controlled substances.[14]  (Id. ¶ 122.)  Defendant Weiss, as a result of his investigation, recommended to the DACU that Jones be charged with knowingly or intentionally possessing a controlled substance (heroin) by a person not registered under the Act, and with knowing purchase or intentional receipt of a controlled substance (heroin) from a person not authorized by law to sell such controlled substance.[15]  (Id. ¶ 123.)  Finally, as a result of his investigation, Defendant Weiss recommended to the DACU that Alicea be charged with knowingly or intentionally possessing controlled substances (heroin and crack cocaine) by a person not registered under the Act; the manufacture, delivery or possession with intent to manufacture or deliver controlled substances (heroin and crack cocaine) by a person not registered under the

_____

[14] Plaintiffs' Statement of Disputed Material Facts states the following: "Plaintiffs contest whether Detective Weiss made the final charging decision regarding Jasmine Johnson nor had authority to, nor was the actual person whom conveyed a final charging recommendation to the District Attorney Charging Unit ("DACU") and aver Defendant Schweizer and/or Police Officer Sergeant Scott Drissel, Badge Number 8711, were the person(s) whom were responsible for this action."  (Pls.' Resp. Opp'n Mot. Summ. J. 4 (citing Pls.' Ex. 1, 75-49 Investigation Report).)  Plaintiffs go on to assert, without pointing to any supporting exhibit citation or other evidence, that "Scott Schweizer and/or Scott Drissel made the charging recommendation regarding Jasmine Johnson to the DACU for reasons of attempting to leverage her as a confidential informant and/or cooperating government witness against the Medina/Serrano Drug Trading Organization ("DTO"), Rafael Cordero, and Plaintiff Alicea who they believed worked for the group."  There is nothing in Plaintiffs' Exhibit 1 to support Plaintiffs' assertions or which contradicts the statements in the Weiss Declaration.  Accordingly, Plaintiffs do not create a genuine issue of material fact on that point.

[15] Plaintiffs advance the same factual "dispute" regarding Plaintiff Jones as described in footnote 6, which does not create a genuine issue of material fact.

Act; possession of a firearm by a person convicted of murder and robbery; carrying a firearm in any vehicle without a license; and the unlicensed carrying of a firearm at any time upon a public street in Philadelphia.[16]  (Id. ¶ 124.)  He based these recommendations on the information and evidence provided to him by the arresting officers, his investigation into Alicea, Jones, and Johnson's backgrounds, and his knowledge of the applicable drug and criminal statutes in Pennsylvania.  (Id. ¶ 125.)  At no time did Defendant Weiss believe that any of the information and/or evidence provided to him by the other officers was false.[17]  (Id. ¶ 126.)

Defendant Weiss does not charge criminal suspects with crimes; the District Attorney does.  (Id. ¶ 127.)  He only makes recommendations, which the District Attorney may approve, disapprove, or modify.  (Id. ¶ 128.)  Defendant Weiss did not, at any time during the investigations or prosecutions of Alicea or Jones, provide false information to the District

---

[16] Plaintiffs advance the same factual "dispute" regarding Plaintiff Alicea as described in footnotes 6 and 7, which does not create a genuine issue of material fact.

[17] Plaintiffs "contest Defendant Weiss' averment that at no time he believed any of the information or evidence provided to him by Defendants Schweizer, Pross, Ziegler, and Parker was false.  All the police reports provided to him and signed by [those Defendants] were contradictory in the drug descriptions, as later confirmed by the Philadelphia Police Department Chemistry Laboratory.  Since, Defendant Weiss examined the evidence, including the narcotics and its packaging, the discrepancies between [those Defendants'] descriptions of the controlled substances and their actual appearance would have been obvious.  First regarding Plaintiff Alicea, the Evidentiary Control Data Form, completed by chemist Ali Ahmed of the Philadelphia Police Department Chemistry Laboratory checked the box, stating the Property Receipt was corrected to match the evidence."  (Pls.' Resp. Opp'n Mot. Summ. J. 6 (citing Pls.' Exs. 2–4.)

Plaintiffs have not created a genuine issue of material fact as to whether Defendant Weiss believed any information provided to him by the other Defendants was false.  Plaintiffs' exhibits 2, 3, and 4 do not indicate in what way the property receipt was corrected to match the evidence or in what way the Defendants' descriptions of the narcotics' appearance was different from the chemist's description.  Plaintiffs may be referring to the fact that the narcotics were described on various forms as "white," "off-white," and "tan," but they do not cite those forms in support of their assertion that Defendant Weiss did not believe he had been provided false information.  Furthermore, the color description of the narcotics could reasonably vary from white, to off-white, to tan, depending on who was observing the narcotics, the lighting conditions at the time they were observed, and whether the narcotics were still inside of the blue glassine packets or orange packets at the time they were observed.

Attorney.  (<u>Id.</u> ¶¶ 129–130.)  Defendant Weiss had no physical contact with Alicea or Jones during his investigations.  (<u>Id.</u> ¶ 131.)  Defendant Weiss did not receive information from any of the arresting officers that they had had to use force, or that they had witnessed any other officer on the scene use force, to arrest Alicea, Jones, or Johnson.  (<u>Id.</u> ¶ 132.)

## C.  <u>Procedural History</u>

Plaintiffs filed a complaint in the Court of Common Pleas for Philadelphia County on October 14, 2013, which consisted of 448 paragraphs, 28 counts, and 16 exhibits, but which did not contain any federal claims.  (<u>See</u> Defs.' Mem. Supp. Mot. Summ. J. 1; Pls.' Resp. Opp'n Mot. Summ. J. 1.[18])  Defendants filed preliminary objections to Plaintiffs' complaint on November 15, 2013.  Plaintiffs filed an amended complaint in state court on December 5, 2013. The amended complaint consisted of 172 paragraphs, 10 counts, and 14 exhibits, but did not contain federal claims.  (<u>Id.</u>)  Defendants filed preliminary objections to Plaintiffs' amended complaint on December 20, 2013.  On January 8, 2014, Plaintiffs filed a second amended complaint, which included federal claims, and which consisted of 161 paragraphs, 6 counts, and 14 exhibits.  (<u>Id.</u> at 2.)  Defendants removed the Complaint to federal court on January 14, 2014 and moved to dismiss it.  Plaintiffs filed an Amended Complaint on February 15, 2015. Defendants filed a Motion for Summary Judgment on May 1, 2015.  Plaintiffs filed a response in opposition on May 15, 2015.[19]  As the briefing process has been exhausted, Defendants' Motion for Summary Judgment is now ripe for judicial consideration.

---

[18] Plaintiffs did not number the pages of their Response in Opposition, so the Court has supplied the numbering for them.

[19] Plaintiffs titled their brief "Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment," and have not filed a cross-motion for summary judgment.  However, Plaintiffs' proposed order requests that the Court grant the Plaintiffs' Motion in Opposition, rather than request that the Court deny Defendants' Motion for Summary Judgment.  Generally, however, in their Argument section Plaintiffs conclude various arguments by asserting that

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an

summary judgment should not be granted in favor of the Defendants.  (See, e.g., Pls.' Resp. Opp'n Mot. Summ. J. 32, 46.)  The Court will therefore proceed by deciding the only motion before it at this time—Defendants' Motion for Summary Judgment.

element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  <u>Celotex</u>, 477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  <u>Anderson</u>, 477 U.S. at 249–50.

## III.   DISCUSSION

Plaintiffs claim they suffered violations of their federal and state constitutional rights and that Defendants committed numerous state law torts and negligent acts against them, all stemming from their encounters with several of the Defendants which led to the arrests of Plaintiffs Alicea and Jones on October 16, 2011.  After careful consideration, the Court finds that Defendants have demonstrated an absence of genuine issues of material fact, and that no reasonable fact-finder would be able to return a verdict in Plaintiffs' favor.  Accordingly, summary judgment for Defendants on all counts in the Amended Complaint is appropriate.[20]

### A.   <u>Count One:  Assault and Battery</u>

Count One of the Amended Complaint, titled "Assault and Battery," incorporates the allegations in Paragraphs One through Eighty-Nine and sets forth thirteen paragraphs discussing case law regarding the availability of claims against government entities and individuals for constitutional violations, inadequate supervision or deliberate indifference, municipal liability, qualified immunity, and official capacity versus individual capacity claims, as well as descriptions of the contents of the Fourth, Fifth, and Fourteenth Amendments.  (Am. Compl. ¶¶ 90–103.)  Count One then states that the Plaintiffs demand judgment against Defendants

---

[20] Defendants and Plaintiffs both request that this Court decide Defendants' Motion for Summary Judgment as to the federal and state law claims.  (<u>See</u> Defs.' Mem. Supp. Mot. Summ. J. 6; Pls.' Resp. Opp'n Mot. Summ. J. 19.)

Schweizer and Pross in their individual capacities.  (Am. Compl., Count I WHEREFORE Clause.)

Defendants read Count One as containing the following types of claims:

    a)  Claims by all Plaintiffs against Defendants Schweizer and Pross for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

    b)  Claims by all Plaintiffs against Defendants Schweizer and Pross, under state common law, for assault and battery;

    c)  Claims by all Plaintiffs against Defendants Schweizer and Pross for deprivations of rights under the Constitution of the Commonwealth of Pennsylvania; and

    d)  Claims by all Plaintiffs against Defendant City of Philadelphia for failure to train, supervise, and discipline its employees.

(Defs.' Mem. Supp. Mot. Summ. J. 3.)  Defendants argue that they are entitled to summary judgment because Plaintiffs have not developed sufficient evidence for their claims in Count One.  (Id. at 7.)

### 1.  Federal Claims Against Defendants Schweizer and Pross Pursuant to the Fourth, Fifth, and Fourteenth Amendments

Fourth Amendment jurisprudence makes clear that police may make a warrantless search upon reasonable suspicion during an investigatory stop, and that if the officers determine that they have probable cause to arrest an individual, they may then search the arrestee and the area within his or her immediate control incident to the arrest.  See Terry v. Ohio, 392 U.S. 1 (1968); Arizona v. Gant, 536 U.S. 332, 338 (2009).  Police may seize incriminating evidence uncovered during a search incident to arrest.  Horton v. California, 496 U.S. 128, 135 (1990) (citing Chimel v. California, 395 U.S. 752, 762–763 (1969)).  Individuals who believe their Fourth Amendment rights have been violated may seek relief against state actors pursuant to 42 U.S.C. § 1983.

Plaintiffs have not set forth any evidence that Plaintiffs Aurea Martinez, Ruth Martinez, or Elisa Velazquez were detained, searched, or arrested by Defendant Schweizer or Defendant Pross.  Thus, their Fourth Amendment rights were not violated.[21]  With respect to Plaintiff Jones, Defendants Parker and Ziegler conducted a valid investigatory stop based on reasonable suspicion and recovered evidence of suspected narcotics pursuant to a <u>Terry</u> search, after which they arrested him.  Accordingly, his Fourth Amendment rights were not violated.[22]  With respect to Plaintiff Alicea, Defendants Schweizer and Pross observed him engage in conduct that raised reasonable suspicion that he was party to a drug transaction, learned from other officers that the individuals with whom he was observed were stopped and that they possessed suspected illegal narcotics, stopped him and recovered suspected illegal narcotics pursuant to a <u>Terry</u> search, and arrested him based on the incriminating evidence they discovered.  They then discovered a handgun in the immediate vicinity of Plaintiff Alicea pursuant to a search incident to arrest.

---

[21] Plaintiffs assert that Defendants Schweizer and Pross have not provided information to establish probable cause for the "warrantless and unconsented search of Plaintiff Aurea Martinez's vehicle" and that "there is a material factual dispute regarding Plaintiff Aurea Martinez's claims her van was improperly searched as Defendants Pross and Schweizer deny those actions."  (Pls.' Resp. Opp'n Mot. Summ. J. 19–20.)  The evidence submitted by Defendants establishes that the cigarette box containing packets of narcotics was recovered from the ground near the tire of a silver van, and that the bag containing a handgun was recovered from on top of one of the tires.  Plaintiffs have not submitted any evidence to show that the van belongs to Aurea Martinez, that the search incident to Alicea's arrest was invalid, or that the items were not in plain view.  Plaintiffs also assert that "[i]n Plaintiffs [sic] pleadings there is substantial evidence that Plaintiff Aurea Martinez was detained, seized, and searched by Defendants Pross and Schweizer."  Plaintiffs' pleadings, however, are not evidence.  Accordingly, Plaintiffs have not submitted evidence establishing a factual dispute that would preclude a grant of summary judgment to Defendants on this issue.

[22] Plaintiffs do not submit any evidence to support their arguments on this issue, and thus their arguments do not preclude a grant of summary judgment to Defendants on this claim.  (<u>See</u> Pls.' Resp. Opp'n Mot. Summ. J. 21–22.)

Accordingly, his Fourth Amendment rights were not violated.[23]  With respect to Plaintiffs'

claims that officers used excessive force on Plaintiff Jones and Plaintiff Alicea, no evidence has

been set forth that demonstrates the existence of a genuine issue of material fact on that point.

As such, no reasonable jury could conclude, based on the record the parties have created, that

Defendant Pross or Defendant Schweizer used excessive force in violation of the Fourth

Amendment.

As to Plaintiffs' Fifth Amendment claims, none of the Defendants in this case is a federal

official, and accordingly Defendants are entitled to summary judgment as to all Plaintiffs' Fifth

Amendment claims.[24]  See, e.g., Nicolette v. Caruso, 315 F. Supp. 2d 710, 718 (W.D. Pa. 2003)

(finding that "Plaintiff's claim must be dismissed because the due process clause of the Fifth

---

[23] Plaintiffs do not submit any evidence to support their arguments on this issue, and thus their
arguments do not preclude a grant of summary judgment to Defendants on this claim.  (See Pls.'
Resp. Opp'n Mot. Summ. J. 22–23.)  Plaintiffs do not cite any evidence to support their claims
about Plaintiff Alicea's location and conduct prior to his arrest, including that he was "helping
Plaintiffs Martinez and Martinez unload furniture into a church" at the time that Defendants say
they observed him engaging in narcotics transactions at approximately 11:45 at night.  (Id. at 23.)

[24] Plaintiffs argue that although "it is undisputed that none of the defendants in this civil action is
a federal official," summary judgment should not be granted in favor of Defendants "[b]ecause
Plaintiffs allege violations of their substantive and procedural due process by state officials, and,
Plaintiff's [sic] claim founded on the Fifth Amendment due process rights, however, are implied
under the Fourteenth Amendment.  Further, Plaintiffs contend the Defendants Schweizer, Pross,
Ziegler, and Parker while not employed as federal agents, were acting pursuant to their directions
and commands."  (Pls.' Resp. Opp'n Mot. Summ. J. 25.)  Plaintiffs support their argument by
describing, and quoting at length from, a federal indictment stemming from an investigation into
drug trafficking taking place at 538 East Indiana Street in Philadelphia.  (See id. at 25–28.)
Plaintiffs assert that "[i]t was common knowledge to Defendants, especially, Schweizer, Pross,
Ziegler, Parker, Weiss, Ramsey, that not all Medina/Serrano DTO organizational members had
been arrested.  Further, these Defendants would have obviously known persons not affiliated
with the Medina/Serrano DTO would be physically prevented with violence from selling
controlled substances at Indiana and Hartville Streets, which is directly across from the garage
the FBI and DEA raided earlier in the summer of 2011."  (Id. at 28–29.)  Finally, Plaintiffs argue
that "[t]hese Defendants utilized federal resources and were acting pursuant to federal direction
when they were investigating narcotics trafficking on October 16, 2011 when Plaintiffs were first
encountered by them."  (Id. at 29.)  As Plaintiffs have not provided any evidence in support of
their theories, they have not established that Defendants are federal officials against whom Fifth
Amendment claims can be brought.

Amendment does not directly apply to actions of state officials" and noting that "'[t]he limitations of the Fifth Amendment restrict only federal government action.'") (citing Huffaker v. Bucks Cnty. District Attorney's Office, 758 F. Supp. 287, 290 (E.D. Pa. 1991) and quoting Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983)).

With respect to Plaintiffs' Fourteenth Amendment claims, Defendants argue that they are entitled to summary judgment because Plaintiffs' claims concern Fourth Amendment violations, not due process violations under the Fourteenth Amendment.  (See Defs.' Mem. Supp. Mot. Summ. J. 12–13.)  Plaintiffs respond by arguing that "the explicit textual source applicable here for the federal malicious prosecution claims is the Fourteenth Amendment due to Defendant Schweizer's perjury during Plaintiff Alicea's trial proceedings."  (Pls.' Resp. Opp'n Mot. Summ. J. 29–30.)  Plaintiffs have not submitted any evidence to show that Defendant Schweizer was ever found to have committed perjury in the various hearings connected to Plaintiff Alicea's state criminal trial proceedings.  Accordingly, Defendants are entitled to summary judgment as to Plaintiffs' Fourteenth Amendment claims brought under Count One.

On the basis of the above discussion, Defendants are entitled to summary judgment as to all Fourth, Fifth, and Fourteenth Amendment claims contained within Count One.

## 2. **State Law Intentional Tort Claims for Assault and Battery Against Defendants Schweizer and Pross**

Plaintiffs have not set forth any evidence to suggest that either Defendant Schweizer or Pross committed any intentional torts against any of the Plaintiffs.  Indeed, Plaintiffs have not submitted any evidence to show that these Defendants interacted in any capacity with Plaintiffs Aurea Martinez, Ruth Martinez, or Elisa Velazquez, let alone assaulted or battered them.  And, as discussed above with respect to Defendants' Statement of Undisputed Material Facts, the exhibits submitted by Plaintiffs do not constitute evidence that contradicts Defendants'

declarations that physical force was not used on either Plaintiff Alicea or Plaintiff Jones. Accordingly, Defendants are entitled to summary judgment as to Plaintiffs' intentional tort claims of assault and battery.

### 3. Claims Pursuant to the Constitution of the Commonwealth of Pennsylvania Against Defendants Schweizer and Pross

Defendants argue that Plaintiffs cannot recover monetary damages based on the Constitution of the Commonwealth of Pennsylvania because it does not create a right to monetary relief. (Defs.' Mem. Supp. Mot. Summ. J. 21 (citing Jones v. City of Phila., 890 A.2d 1188 (Pa. Commw. Ct. 2006), appeal denied 909 A.2d 1292 (Pa. 2006)).) Defendants are correct that there is no private right of action for monetary damages under the Pennsylvania Constitution. See Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) (citing Jones, 890 A.2d at 1208 ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")). Plaintiffs respond with a confused discussion of Commonwealth v. Edmunds, 586 A.2d 887, 895 (Pa. 1991)[25] without applying anything from that case to the facts of Plaintiffs' case or their claims, or arguing how that case is contrary to Defendants' position. Accordingly, Defendants Schweizer and Pross are entitled to summary judgment as to all Plaintiffs on this aspect of their claims under Count One.

### 4. Municipal Liability Claim Against Defendant City of Philadelphia

As discussed above, Defendants are entitled to summary judgment as to Plaintiffs' claims in Count One regarding the alleged Fourth, Fifth, and Fourteenth Amendment violations, intentional torts of assault and battery, and claims based on the Constitution of the

---

[25] In Edmunds, the Court described the four factors litigants should set forth for a court's analysis so that it might "make a 'plain statement' of the adequate and independent state grounds upon which" it relies in order to show that decisions concerning criminal procedure rest on Pennsylvania jurisprudence. See Com. v. Edmunds, 586 A.2d 887, 895 (Pa. 1991).

Commonwealth of Pennsylvania, against Defendants Schweizer and Pross.  Since Defendants are entitled to summary judgment against the individual Defendants on those claims, Defendant City of Philadelphia is entitled to summary judgment as to the municipal liability claim included in Count One.  See, e.g., Reiff v. Marks, 511 F. App'x 220, 223 (3d Cir. 2013) (stating that "a municipality may not be held liable on a failure to train theory when a jury has found that the plaintiff has suffered no constitutional violation.") (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (explaining that no Supreme Court "cases authorize[ ] the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm")).

### B.    Count Two: False Imprisonment

Count Two incorporates the allegations of all preceding paragraphs, and demands judgment against Defendants Schweizer, Weiss, Ziegler, Parker, and Pross, in their individual capacities.  (Am. Compl. ¶ 104, Count II WHEREFORE Clause.)

Defendants read Count Two as stating false imprisonment claims by all Plaintiffs against all Defendants, "apparently incorporating federal grounds for the alleged 'false imprisonment.'" (Defs.' Mem. Supp. Mot. Summ. J. 3.)  Defendants indicate that, because false arrest and false imprisonment are essentially the same claim in Pennsylvania, they are entitled to summary judgment as to Plaintiffs' false imprisonment claims for the same reasons they are entitled to summary judgment as to Plaintiffs' Fourth Amendment claims.  (See Defs.' Mem. Supp. Mot. Summ. J. 8 n.7 (citing Olender v. Twp. Of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999); Defs.' Mem. Supp. Mot. Summ. J. 9 n.8.)  The Court was unable to locate any discussion of, or arguments regarding, Plaintiffs' false imprisonment claims in Plaintiffs' Response in Opposition.

"False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'"  Karkut v. Target Corp., 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting Brockington v. Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citation omitted)). "Specifically, false arrest is one made 'without probable cause.'"  Id.  "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest."  Id. (citation omitted). "To prevail on a § 1983 malicious prosecution claim, a plaintiff must show that the 'proceeding was initiated without probable cause.'"  Stetser v. Jinks, 572 F. App'x 85, 86–87 (3d Cir. 2014) (quoting Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (citation omitted)).

"Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'"  Stetser, 572 F. App'x at 87 (quoting United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979))).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  "Although the probable cause inquiry is usually a question for the jury, 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'"  Stetser, 572 F. App'x at 87 (quoting Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (citation omitted), abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209–11 (3d Cir. 2007); see also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d Cir. 2000) ("a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual

finding,' and may enter summary judgment accordingly.") (quoting <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 401 (3d Cir. 1997)).  In this case, based on the evidence submitted by Defendants, and in the absence of any contrary evidence submitted by Plaintiffs, Defendants had probable cause to arrest Plaintiff Jones and Plaintiff Alicea.  Thus, Defendants are entitled to summary judgment on Plaintiffs' false imprisonment claims.

### C.      Count Three: Malicious Prosecution

Count Three alleges that Defendants Schweizer, Weiss, Ziegler, Parker, and Pross, in their individual capacities, "all procured, initiated, or continued civil[26] proceedings; and acted in a grossly negligent manner; and/or without probable cause; and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; against Plaintiff's [sic] Kevin Jones and Hector Alicea."  (Am. Compl. ¶ 106, Count III WHEREFORE Clause.)  Plaintiffs further allege that these Defendants acted maliciously or for a purpose other than bringing the Plaintiffs to justice when initiating proceedings, and for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based.  (<u>Id.</u> ¶¶ 107–108.)

"To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted).  "'In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious

---

[26] The Court presumes that Plaintiffs mean "criminal" proceedings.

prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual.'" Stango v. Rodden, No. Civ.A.00-5709, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001) (citing Harris v. City of Phila., No. Civ.A.97-3666, 1998 U.S. Dist. LEXIS 12640, at *13 (E.D. Pa. Aug. 14, 1998) (citing Albright v. Oliver, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring)); accord Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996))). "'However, a police officer may be held to have 'initiated' a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion, [because] . . . [i]n such cases, an intelligent exercise of the . . . [prosecutor's] discretion becomes impossible, and a prosecution based on the false information is deemed procured by the person giving the false information.'" Id. (citations omitted).

Defendants interpret Count Three as containing "federal and state common law malicious prosecution claims." (Defs.' Mem. Supp. Mot. Summ. J. 3.) Defendants argue that they are entitled to summary judgment on Count Three because (1) neither Plaintiff Jones nor Plaintiff Alicea can prove that any of the named defendants instituted a criminal proceeding against him; (2) their arrests were based on probable cause; and (3) neither Plaintiff developed sufficient evidence to allow a reasonable jury to conclude that any of the named defendants acted maliciously or for any purpose other than to bring Plaintiff Jones and Plaintiff Alicea to justice. (See id. at 14–15.) In spite of Plaintiffs' arguments to the contrary,[27] they have not established

---

[27] Plaintiffs make numerous arguments in their Response in Opposition that are not supported by evidence or which rely on evidence that does not constitute the existence of a genuine issue of material fact. (See Pls.' Resp. Opp'n Mot. Summ. J. 30–31.) Plaintiffs have not shown that Defendants Pross, Parker, Ziegler, or Schweizer provided knowingly false evidence, and the allegations in the Amended Complaint are not evidence that can be relied upon in opposition to a summary judgment motion. Plaintiffs do not cite any evidence showing that Plaintiff Jones's trial ended in his favor, which is one of the required elements of a malicious prosecution claim. Thus, Plaintiffs' arguments are not persuasive.

the required elements of a malicious prosecution claim, and therefore Defendants are entitled to summary judgment on Count Three.

     **D.**    **Count Four: Intentional Infliction of Emotional Distress**

Count Four alleges that "[t]he Defendants herein referenced in the above-mentioned count"[28] caused "all Plaintiffs severe emotional distress from their actions including but not limited [sic] restlessness, sleeplessness, trauma, shock, fear, anxiety, depression, and numerous other related injuries."  (Am. Compl. ¶ 110.)  Plaintiffs also allege that Defendants City of Philadelphia and Commissioner Ramsey "displayed a deliberate indifference by failing to act to stop the Department's persistent narcotics investigation and arrest practices and specifically failed to act to stop Defendant Scott Schweizer despite knowledge about his previous disciplinary history, from committing Federal Constitutional violations.  See supra."  (Id. ¶ 111.) Plaintiffs further allege that the actions and lack of actions by Defendants City of Philadelphia and Commissioner Ramsey, which Plaintiffs describe as "allowing a wide spread policy of policing which it is plainly obvious and highly predictable would lead to substantial violations of persons [sic] Federal Constitutional rights, privileges, immunities, and liberties," were the "moving force" leading to Plaintiffs' injuries.  (Id. ¶ 112.)  Plaintiffs seek damages against all Defendants, and seek punitive and exemplary damages against Defendants Schweizer, Weiss, Ziegler, Parker, and Pross in their individual capacities.  (Am. Compl., Count IV, WHEREFORE Clause.)

Defendants read Count Four as containing "state common law intentional tort claims of intentional infliction of emotional distress by all the Plaintiffs against all the Defendants."

---

[28] It appears, based on the content of Count Four's "Wherefore Clause," that Plaintiffs mean to assert Count Four as against the Defendants named in Count Three, specifically Defendants Schweizer, Weiss, Ziegler, Parker, and Pross.  (Am. Compl., Count IV WHEREFORE Clause.)

(Defs.' Mem. Supp. Mot. Summ. J. 3.)  "In order to recover, a plaintiff must show conduct so extreme and outrageous that it intentionally or recklessly caused him severe emotional distress." Bock v. CVS Pharmacy, Inc., No. Civ.A.07-412, 2008 WL 3834266, at *2 (E.D. Pa. Aug. 14, 2008) (citing Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing Restatement (Second) of Torts § 46))).  "In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Kasper v. Cnty. of Bucks, 514 F. App'x 210, 217 (3d Cir. 2013) (internal citations and quotations omitted).  "A plaintiff seeking to establish intentional infliction of emotional distress must also support his claim with 'competent medical evidence,' because 'it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress.'"  Bock, 2008 WL 3834266, at *2 (quoting Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987)).  "It is appropriate to resolve this dispute via summary judgment because 'it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery.'"  Bock, 2008 WL 3834266, at *2 (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993), appeal denied, 647 A.2d 511 (Pa. 1994)).

Defendants argue that they are entitled to summary judgment on Count Four for several reasons.  First, Defendants argue that there is no evidence in the record that would lead a reasonable jury to conclude that any Defendant is liable to Plaintiffs Aurea Martinez, Ruth Martinez, or Elisa Velazquez for intentional infliction of emotional distress, because none of

those Plaintiffs produced any expert medical evidence to show that they are suffering from severe emotional distress.  (Defs.' Mem. Supp. Mot. Summ. J. 23–24.)  Defendants are correct that, on that basis alone, all Defendants are entitled to summary judgment as to Count Four with respect to Plaintiffs Aurea Martinez, Ruth Martinez, and Elisa Velazquez.[29]

Second, Defendants argue that Plaintiff Alicea and Plaintiff Jones were arrested and criminally prosecuted based on probable cause, and that they have not produced any evidence to show that they were subjected to excessive or unlawful use of force by any Defendant.  (Defs.' Mem. Supp. Mot. Summ. J. 25.)  Thus, according to Defendants, Plaintiffs have not produced evidence to show that they were subjected to outrageous conduct.  Furthermore, Plaintiffs Alicea and Jones have not submitted any "competent medical evidence" to show that they are suffering from the claimed emotional distress.  Accordingly, all Defendants are also entitled to summary judgment as to Count Four with respect to Plaintiffs Alicea and Jones.[30]

---

[29] Plaintiffs do not submit any argument as to the absence of medical evidence to show that Plaintiffs Aurea Martinez, Ruth Martinez, and Elisa Velazquez suffered or suffer from severe emotional distress.  Plaintiffs also failed to include any evidence with their Response to Defendants' Motion for Summary Judgment to support their claims that Defendants behaved in an outrageous manner towards these Plaintiffs.  Accordingly, Plaintiffs' arguments are not persuasive.  (See Pls.' Resp. Opp'n Mot. Summ. J. 44.)

[30] As discussed above, the evidence on which Plaintiffs rely does not establish a genuine issue of material fact regarding Defendants' conduct towards Plaintiffs Alicea and Jones on the night they were arrested, and therefore Plaintiffs have not produced evidence to establish the required elements of intentional infliction of emotional distress.  (See Pls.' Resp. Opp'n Mot. Summ. J. 45–46.)  Plaintiffs do not submit any arguments regarding the absence of medical evidence for Plaintiff Jones, but argue that Plaintiff Alicea "has been unable to receive access to medical care for which he can receive a report because he is incarcerated and has often been denied or made to wait excessive time periods for access to mental health care."  (Id. at 46.)  Plaintiff Alicea has not submitted any affidavit or declaration stating as much, but even if that fact were true, Plaintiffs have still not submitted any evidence that precludes a grant of summary judgment in Defendants' favor on this claim.

### E.   **Count Five: Negligent Infliction of Emotional Distress**

In Count Five, Plaintiffs allege that "[t]he Defendants herein referenced in the above-mentioned count[31] caused all Plaintiffs severe emotional distress from their actions including but not limited [sic] restlessness, sleeplessness, trauma, shock, fear, anxiety, depression, and numerous other related injuries."  (Am. Compl. ¶ 114.)  Plaintiffs Eliza Velazquez, Ruth Martinez, and Aurea Martinez "had a close personal relationship extending many years into the past with Plaintiff Hector Alicea" and "[t]hese Plaintiffs [sic] close personal relationship with Plaintiff Hector Alicea caused even more shock and trauma at witnessing the Defendants' actions against him."  (Id. ¶ 115.)  Plaintiffs allege that "[t]he herein named Defendants in the above referenced count" acted in an extreme and outrageous manner, that Defendants "knew probable cause did not exist for stopping, questioning, seizing, arresting, searching, and/or detaining Plaintiffs," and that "[t]he Defendants [sic] actions here were intentional because the Defendants ignored the recognized standard for establishing probable cause for making an arrest."  (Id. ¶¶ 116–117.)  Plaintiffs seek damages against all Defendants, and seek punitive and exemplary damages against Defendants Schweizer, Weiss, Ziegler, Parker, and Pross in their individual capacities, as well as attorneys' fees, costs, interest, "and the like."  (Am. Compl., Count V WHEREFORE Clause.)  Defendants read Count Five as consisting of state common law claims for negligent infliction of emotional distress by all the Plaintiffs against all the Defendants.  (Defs.' Mem. Supp. Mot. Summ. J. 3.)

"In Pennsylvania, a claim of negligent infliction of emotional distress is limited to situations in which: (1) the defendant owed the plaintiff a fiduciary or contractual duty; (2) the

---

[31] It appears, based on the content of Count Five's "Wherefore Clause," that Plaintiffs mean to assert Count Five as against the Defendants named in Count Four, specifically Defendants Schweizer, Weiss, Ziegler, Parker, and Pross, as well as Defendants City of Philadelphia and Commissioner Ramsey.  (Am. Compl., Count V WHEREFORE Clause.)

plaintiff was subjected to a physical impact; (3) the plaintiff reasonably experienced a fear of

impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."

Credico v. Unknown Employee of the Houston FBI Forfeiture Unit, 567 F. App'x 83, 84 (3d

Cir.) (Mem.), cert. dismissed sub nom. Credico v. Unknown Employee of Houston F.B.I.

Forfeiture Unit, 135 S. Ct. 688 (2014) (citing Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202,

217 (Pa. Super. Ct. 2012)); see also Goodson v. Kardashian, 413 F. App'x 417, 418 (3d Cir.

2011) (describing the required elements of a claim for negligent infliction of emotional distress

in Pennsylvania).  In this case, Plaintiffs have not submitted evidence[32] demonstrating that any of

the Plaintiffs were owed a fiduciary or contractual duty by any of the Defendants, or that, as a

result of the Defendants' conduct, they experienced a physical impact, reasonably experienced a

fear of an impending physical injury, or observed a tortious injury to a close relative.  Thus, none

of the Plaintiffs has established a claim for negligent infliction of emotional distress, and

accordingly all Defendants are entitled to summary judgment on Count Five as to all Plaintiffs.

### F.      Count Six: Negligence

Count Six asserts that Defendants Schweizer, Pross, Zeigler, Parker, Weiss, and

Commissioner Ramsey "breached their respective duties as citizens and law enforcement agents

pursuant to the United States Constitution."  (Am. Compl. ¶ 120.)  Plaintiffs allege that their

injuries were the direct, legal, and proximate result of those Defendants' negligence.  (Id. ¶ 121.)

Plaintiffs seek compensatory, punitive, and exemplary damages against those Defendants in their

individual capacities.  (Id., Count VI WHEREFORE Clause.)

Defendants interpret Count Six as consisting of "a peculiar mixture of negligence claims

erroneously based on federal case law, and perhaps state common law negligence, by all the

---

[32] Plaintiffs also did not include an argument specific to their negligent infliction of emotional
distress claim in their Response.

Plaintiffs against all the Defendants, including Commissioner Charles Ramsey." (Defs.' Mem. Supp. Mot. Summ. J. 3–4.) Defendants argue that Plaintiffs' state law negligence claims are barred by the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), and that therefore they are entitled to summary judgment on Count Six. (See Defs.' Mem. Supp. Mot. Summ. J. 21–22 (citing 42 Pa. Cons. Stat. § 8541 et seq.).)

The Tort Claims Act states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. "Section 8542 provides that an injured party may recover in tort from a local governmental agency if: (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories." Id. (citing Cureton v. Phila. Sch. Dist., 798 A.2d 279, 283 (Pa. Commw. Ct. 2002) (citing 42 Pa. Cons. Stat. § 8542), appeal denied, 820 A.2d 704 (Pa. 2003)). The eight enumerated categories are: 1) operation of motor vehicles; 2) care, custody or control of personal property; 3) care, custody or control of real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody or control of animals. See 42 Pa. Cons. Stat. § 8542. According to Defendants, therefore, the Tort Claims Act bars Plaintiffs' "negligence" claim because the claim does not fall within one of the eight enumerated categories. Plaintiffs argue that Defendants are liable under the Tort Claims Act because "Defendants Schweizer and Pross removed approximately $140 from Plaintiff Alicea's person, which was legally possessed, and failed to account for approximately $50, which they seized and was entrusted to their care, custody, and control." (Pls.' Resp. Opp'n

37

Mot. Summ. J. 43.)[33]  While Plaintiffs are correct that such a claim would fall within the exception for "care, custody or control of personal property," they have not provided any evidence to support that allegation.  Plaintiffs also failed to provide any evidence that contradicts Defendants' declarations stating that Defendant Pross recovered $96 when he searched Plaintiff Alicea.  Accordingly, Defendants are entitled to summary judgment on Count Six as to all Plaintiffs.

      **G.**      **Count Eight: Punitive Damages**

In Count Eight, [34] Plaintiffs make no specific factual allegations, stating only that Count Eight incorporates all facts from the preceding paragraphs of the Amended Complaint.  (Am. Compl. ¶122.)  Plaintiffs seek exemplary and punitive damages, plus attorneys' fees and costs, against Defendants Weiss, Schweizer, Pross, Parker, Ziegler, and Commissioner Ramsey, in their individual capacities.  (Id., Count VIII WHEREFORE Clause.)

Plaintiffs make no indication of, and include no argument regarding, the basis for their stand-alone punitive damages claim, or whether or how their claim in Count Eight is distinct from the requests for punitive damages they made in connection with certain other claims in the Amended Complaint.  Accordingly, Defendants' Motion for Summary Judgment with respect to Count Eight is granted.

---

[33] Plaintiffs do not make any other argument in their Response to explain what other aspects of their general negligence claim, if any, they intended to advance.  Bizarrely, that section of their Response includes a verbatim section of the Defendants' Memorandum of Law in which the Plaintiffs apparently also argue that "summary judgment must be granted in favor of all the defendants on Plaintiffs' negligence claims in the Amended Complaint.  Not one of the negligence claims is premised on a negligent act for which the City and the individual officers and detective may be held liable under the Tort Claims Act.  Moreover, Plaintiffs' punitive damages claims premised on negligence are not recoverable against any individual Defendant under the Tort Claims Act."  (Compare Pls.' Resp. Opp'n Mot. Summ. J. 43–44) with Defs. Mem. Supp. Mot. Summ. J. 22.)

[34] There is no Count Seven in the Amended Complaint.

**IV.     CONCLUSION**

Having reviewed the briefs and their exhibits, the Court finds that Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  Accordingly, the Court shall grant Defendants' Motion for Summary Judgment in its entirety.

An appropriate Order follows.